# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| THERESA D. RICE,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner for Operations, performing duties and functions not reserved to the Commissioner of Social Security,<br><br>Defendant. | Case No. ED CV 17-1405-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Theresa D. Rice appeals from the Social Security Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner's decision is affirmed and this case is dismissed with prejudice.

## I. BACKGROUND

Plaintiff filed applications for DIB and SSI on July 1, 2013, alleging disability beginning on September 20, 2011. See Dkt. 16, Administrative Record ("AR") 281-93. After being denied initially and upon reconsideration, Plaintiff timely requested and received a hearing before an Administrative Law Judge ("ALJ") on June 16, 2015. See AR 234, 242-67. At the hearing, the ALJ

heard testimony by Plaintiff, who was unrepresented, and a vocational expert ("VE").[1] See AR 104-36. On February 22, 2016, the ALJ issued an unfavorable decision finding Plaintiff not disabled. See AR 25-39.

The ALJ determined that Plaintiff had the severe impairments of obesity, sleep apnea with CPAP usage, stable hypertension, degenerative disc disease of the lumbar spine, and osteoarthritis of the bilateral knees. See AR 31. The ALJ also found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following limitations: she could stand/walk for 3 hours and sit for 6 hours in an 8-hour workday; never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; needs the use of a hand held assisted device when walking on uneven terrain or prolonged ambulation of over 5 minutes of continuous walking; could have frequent exposure to heat, wetness, and humidity; could occasionally use moving hazardous machinery and be exposed to unprotected heights; and was able to perform unskilled and semi-skilled work at all reasoning levels. See AR 33-38. Based on the evidence of record, the ALJ determined that Plaintiff could perform her past relevant work as a customer service representative and telemarketer. See AR 38-39. Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. See AR 39.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-6. This action followed. See Dkt. 1.

## II.  DISCUSSION

The parties dispute whether the ALJ erred in: (1) assessing Plaintiff's RFC, (2) rejecting testimony from Plaintiff and her daughter, and (3) finding

---

[1] Plaintiff is now represented by counsel.

that Plaintiff could perform her past relevant work. See Dkt. 21, Joint Statement ("JS") at 5.

**A.  Plaintiff's RFC**

Plaintiff contends that the ALJ's RFC was not supported by substantial evidence because it did not consider relevant medical evidence of record. See JS at 6-14. A claimant's RFC is what the claimant is capable of doing despite his or her mental and physical limitations. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). The ALJ must consider all relevant evidence in formulating an RFC, and "an RFC that fails to take into account a claimant's limitations is defective." Id. at 690. The ALJ's findings may be set aside if not supported by substantial evidence. See McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

First, Plaintiff faults the ALJ for partially discrediting the opinion of Dr. Vincente Bernabe, a consultative examiner. Dr. Bernabe opined that Plaintiff could perform light work but needed a cane to ambulate and could walk and stand for 2 hours in an 8-hour day. See AR 449-54. The ALJ summarized Dr. Bernabe's opinion and adopted it in part, finding a more restrictive range of sedentary RFC but not fully adopting his cane, standing, and walking limitations. See AR 37-38.

The ALJ offered specific and legitimate reasons for only partially crediting Dr. Bernabe. The ALJ first noted that Dr. Bernabe's opinion did not adequately consider Plaintiff's physical impairments, namely Plaintiff's severe osteoarthritis of the bilateral knees, degenerative disc disease, and morbid obesity. See AR 37. An ALJ may reject a physician's opinion that is unsupported by the record as a whole. See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1195 & n.3 (9th Cir. 2004). With respect to Dr. Bernabe's specific limitations, the ALJ noted that Dr. Bernabe had previously observed Plaintiff walking without the use of a cane. See AR 38 (citing AR

426). An ALJ may reject a physician's opinion that is contradicted by his own treatment notes and by a claimant's own admitted or observed abilities. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). Additionally, the ALJ observed that there was "no indication" that a cane was prescribed by any of Plaintiff's treating physicians, which suggested that it was not medically necessary for all ambulation. AR 38. On this record, the ALJ did not err in partially crediting Dr. Bernabe's limitations.

Second, Plaintiff maintains that the ALJ erred in finding her mental impairment to be nonsevere. See JS at 11-14. The ALJ's finding is supported by substantial evidence. Plaintiff admitted at the hearing that she had not seen a mental health specialist in many years, see AR 119, and her medical records showed only minimal mental health treatments from her primary care doctor, see AR 435-48. The ALJ also referred extensively and gave "great weight" to the findings of Dr. Reynaldo Abejuela, who conducted a complete consultative psychiatric evaluation of Plaintiff. See AR 32. Dr. Abejuela noted Plaintiff's various subjective complaints but opined that she had no more than mild mental limitations. See AR 414-23. The ALJ also noted the findings of the State agency mental medical consultants, both of whom determined that Plaintiff had no more than mild mental limitations. See AR 166-67, 192-193. Altogether, no doctor opined that Plaintiff had anything more than mild mental impairments. Plaintiff's real issue is that the ALJ discounted her subjective complaints of her alleged mental impairments, which is discussed in the next section.

## B. Subjective and Lay Witness Testimony

### 1. Subjective Symptom Testimony

Plaintiff testified that she could not work due to chronic pain in her lower back, legs, and knees. See AR 116-17, 123. Plaintiff also stated she suffered from depression. See AR 119, 127. She alleged an inability to lift more

4

than 3-4 pounds, walk further than a block with the use of a cane, or stand and sit for long periods. See AR 125-26. Plaintiff submitted an Adult Function Report, which was of the same general nature as the subjective complaints from her testimony, and also noted her difficulties with squatting, bending, kneeling, stair climbing, seeing, memory, completing tasks, concentration, and understanding. See AR 332-44. The ALJ found that Plaintiff's allegations were less than fully credible. See AR 34-35.

The Court engages in a two-step analysis to review the ALJ's evaluation of a claimant's symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ gave clear and convincing reasons for discrediting Plaintiff's complaints. The ALJ found that Plaintiff had "not generally received the type of medical treatment one would expect" given her complaints, noting only sporadic doctor visits, significant gaps in treatment, and treatment that was "routine and conservative" in nature. AR 34-35. For example, Plaintiff

testified that her knee and back issues caused her "constantly chronic pain all day long," yet she took only ibuprofen for relief. AR 116-17. Plaintiff did not seek out more aggressive treatments for her pain, such as injections or surgery, and, in fact, had not ever seen—or even been referred to—an orthopedic surgeon. See id. This is the sort of "conservative treatment" that is "sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (finding that ALJ properly discounted subjective symptom testimony where claimant's physical ailments were treated with over-the-counter pain medication). Even when Plaintiff received treatment, she routinely did not complain about knee or back pain. See AR 389-413, 435-48. For instance, although Plaintiff reported knee pain and leg pain in 2012, she appears to have received no treatment for these conditions in 2013 and was prescribed Motrin 600mg only once in 2014 and 2015. See AR 436-48; see also Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (explaining that ALJ may consider unexplained or inadequately explained failure to seek treatment in discounting subjective symptom testimony).

The ALJ also noted that despite Plaintiff's severe complaints, "a review of the record in this case reveals no restrictions recommended by [a] treating doctor." AR 35; see Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008) (conflict between medical source opinion and claimant's testimony is a valid reason to discount subject statements). The record evidence supports the ALJ's conclusion. As just one example, every doctor who rendered an opinion about Plaintiff's capacity opined that she could perform light or medium work, a far cry from Plaintiff's testimony that she could only lift 3-4 pounds.

### 2. Third-Party Testimony

Plaintiff's daughter, Asia Brice, completed a third-party function report. See AR 320-31. Brice wrote that Plaintiff could not lift, stand, or walk for long periods of time, and needs assistance with most personal care activities and chores. See AR 323-24. Brice also wrote that Plaintiff was in "lots of pain," which affected her lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing, seeing, memory, concentration, understanding, and ability to complete tasks. See AR 328. Brice noted in several places that Plaintiff suffered from panic attacks and anxiety attacks. See AR 328-29. The ALJ gave Brice's report little weight. See AR 35.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006)). When rejecting the testimony of a lay witness, an ALJ must give specific reasons germane to that witness. See Valentine, 574 F.3d at 694.

The ALJ validly discounted the report because Brice's statement—which parroted Plaintiff's subjective complaints—was "not consistent with the preponderance of the opinions and observations by medical doctors." AR 35. Inconsistency with medical evidence is a germane reason for discounting lay witness testimony. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). While Brice described Plaintiff's daily functions as extremely limited by her pain, every doctor opined that Plaintiff could perform a least a range of light work. See AR 33-38, 168-69, 194-96, 424-31, 449-54. And, as explained previously, the ALJ properly discounted Plaintiff's pain complaints due to her sporadic and conservative treatment. Accordingly, the ALJ properly discounted Brice's testimony.

## C. Past Employment

Plaintiff contends the ALJ erred at step four by determining that Plaintiff had past relevant work as a customer service representative and telemarketer. See JS at 34-38.

Work experience is considered relevant if it constituted substantial gainful activity (SGA), was done within the last 15 years, and lasted long enough for the claimant to learn how to perform it. See Vertigan v. Halter, 260 F.3d 1044, 1051 (9th Cir. 2001); 20 C.F.R. §§ 404.1565(a), 416.965(a). SGA is work "done for pay or profit that involves significant mental or physical activities." Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001). Statutory guidelines establish a presumption of SGA if the claimant earns over the amount specified in the guidelines. See id.; see also 20 C.F.R. §§ 404.1574(b), 416.974(b) (explaining how minimums are calculated). If a claimant earns less than the required threshold to constitute SGA, the burden of proof shifts to the Commissioner to prove SGA with non-earnings evidence. See Lewis, 236 F.3d at 515.

Plaintiff's July 2014 Disability Report indicated that she worked 40 hours a week in a customer service call center from 1997 to 2007, earning $8.00 per hour. See AR 315. Plaintiff worked 40 hours a week doing "Job Training/Telemarketing" from 2010 to 2011, also at $8.00 per hour. See id. According to Plaintiff's earnings report, she earned $7,313 in 2001, $5,409.05 in 2002, $12,390 in 2003, $7,438.05 in 2004, $13,824.80 in 2005, $7,268.95 in 2006, $2,233.96 in 2007, $0 in 2008 and 2009, $150 in 2010, and $1,824.89 in 2011. See AR 306. At the hearing, the VE asked Plaintiff a few questions about her work history before classifying Plaintiff's past work as customer service representative (DOT 249.362-026) and telemarketer (DOT 299.357-014). See AR 130-31. Plaintiff did not object to the VE's classification. See id.

Plaintiff now argues that her customer service job cannot be past relevant work because she worked at several different companies, some of which did not have the same job tasks and most of which were not performed at SGA levels. See JS at 36-38. At the very least, Plaintiff contends, the ALJ should have developed the record further. See AR 37. The Court does not agree. Neither Social Security rules nor any case law requires that employment be with the same employer. More significantly, the classification of Plaintiff's past work stemmed from her <u>own</u> description of her work history and her hearing testimony, which established that she worked as a customer service representative with earnings high enough to qualify as SGA in 2003 and 2005. See AR 130-31, 306, 315. This is more than sufficient evidence to establish that Plaintiff had past relevant work as a customer service representative.

Plaintiff also argues that her telemarketing job is not past work because she only performed it for a year and made less than $2,000, below the minimum amount to presume SGA. See JS at 36. Even if this was error, it was harmless given the Court's finding that her customer service job was also past work.

## III. CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is affirmed and this action is dismissed with prejudice.

Dated: January 9, 2019

DOUGLAS F. McCORMICK
United States Magistrate Judge